Green, J.
delivered the opinion of the court.
The first question to be considered is, whether the judgments upon which this bill is founded are good and valid or are void? All these judgments (five in number) were obtained on motion for monies paid by the complainant as surety for James Read. In a case of this sort the judgment must recite upon its face and assume the existence of all the facts which are necessary to give the court jurisdiction. 3 Yerger, 361: 8 Yerger, 434. When this is done the judgment is valid and cannot be affected when attacked in this collateral *343 way by the fact that the conclusions of the court were not warranted by the proof. Judging by these principles the judgment, No. 1, for four hundred and eighty dollars and fifty cents, l-endered on the 30th of November, 1832, is good and valid. The judgment, No. 2, for twenty-five dollars, is void, because it is not stated that any judgment had been rendered against Jones as the security of James Read. The judgment, No. 3, for seven hundred and sixteen dollars and seventy-two cents, rendered in the Giles county court 31st of May, 1833, does not assume the existence of the facts necessary to give the court jurisdiction. It states that Jones moved for a judgment for four hundred and seventy-six dollars and fifty-one cents, with interest from the 24th of July, 1824, which on that day he paid as security for the defendant, but it does not state that the fact so appeared to the court, but it states that it appeared that a judgment was rendered against the plaintift' and several others, asbairof James Read, for the sum of eight hundred and forty-seven dollars and fifty cents; to have authorized a-judgment in favor of the plaintiff alone against Read it was indispensable that the sum he had paid as part satisfaction of the said judgment against Read’s bail should have been proved, and the judgment should show on its face that the fact did so appear. It is true the rendition of the judgment against the bail would have authorized a judgment in their favor against Read, the principal, but in that case the judgment could only have been taken for the entire amount of the judgment against them and in the name of all the bail jointly. But this judgment is in the name of Jones only, and for monies he suggests in his motion (but which the court does not say so appeared) was paid by him. We think, therefore, this judgment is void. The judgment, No. 4, rendered the 28th of February, 1828, for nineteen dollars and ninety-six cents is regular, but the judgment, No. 5, rendered 1st June, 1833, for eighty-six dollars, is liable to the same objections which are taken to No. 3. It is not assumed as a fact appearing to the court that the plaintiff had paid this money as security for defendant.
Second. It is insisted that the judgments show upon their *344 face that the monies for which they were rendered were paid by the plaintiff for the defendant more than three years before the motions were made, and that the statute of limitations was a good defence, and that it may now be set up against this bill, which seeks a satisfaction of those judgments. Without expressing any opinion as to the application of the statute of limitations to a suit by motion, it is sufficient to observe that we cannot in this collateral way enquire into the regularity of judgments, and whether they might not have been defeated by the introduction of other evidence than that which was before the court, or by insisting on other defences, or whether the facts the court assumed as existing were sufficiently proved by the testimony before it. Our only enquiry is, are they valid or are they void? Although they may be irregular and liable to be reversed on a writ of error to a superior- court, or upon the introduction of new proof, or different defences on a writ of error coram nobis in the same court in which they were rendered, still they may be executed either by process issuing upon 1hem or by a bill in equity auxiliary thereto.
The third question is, whether the conveyance made by James Read to Hunt for the benefit of his son, and the one made by himself to his son, are fraudulent. We think there is no question but that these deeds were made in fraud of creditors. That the deed to Hunt was so made is manifest from the fact, that if it were fair and Alexander Read had actually paid for the land, there is no reason why the deed should not have been made directly to him. But it was conveyed by James Read to Hunt, and a bond was taken from Hunt to convey to Alexander Read, which he did in compliance therewith in 1831. It does not appear that any consideration was paid by Alexander to James Read, and this circuity of conveyance was adopted doubtless in the expectation that the title bond would pass from Hunt to Alexander purified of the fraud; for Hunt proves that when the conveyance was made to him James Read told him that his object was to avoid the payment of some old debts. This express declaration does but accord with all the other parts of the transaction, every circumstance of which is a badge of fraud. *345 The subsequent deed from James to Alexander Read does not help the transaction; it was but a continuation of the original design, and when taken in connexion with the previous acts of the. parties, contains fuller evidence of fraud. The display of the various considerations which are stated in this deed was a shallow contrivance to keep off creditors, and shows á consciousness that the transaction was surrounded by suspicion and needed something of this sort to show its fairness.. Nor could the original contract, tainted as it originally was with fraud, be purified by the payment of ah honést consideration accompanied by a new conveyance. But we are warranted in the conclusion that these considerations, which are set out in this deed, were not réálly and in good faith paid. If they were, the defendants, circumstanced as the case is, should have proved the payments as alleged. This has not been done, and we áte authorized to conclude could not have been done. We háve no doubt, therefore, of the fraudulent intent of these defendants in this transaction, and consequently the deeds under which Alexander Read claims title to this land 'are void as to the creditors of James Read.
The fourth question for consideration is, whether Alexam der Read is protected by the second section of the statute of limitations of 1819, ch. 28. And the solution of this question depends upon the construction to be given to that act as to the time when the statute commences running, whether from the date of the fraudulent deed from James Read to Hunt or from the date Of the complainant’s judgments against Read. Thé aót provides, “that no person or persons, or their Heirs, shall have, sue or maintain any action or suit either in law or equity for any lands, tenements and hereditaments but within seven years next after his, her or their right to commence, have or maintain such suit shall, have come, fallen or accrued.” The only enquiry then is;' when did the complainant’s right to commence this suit crue? Certainly not .until after the relation of debtor an] creditor had been produced between him and James Ret by the rendition of the judgments; until then he was not creditor in the sense that would authorize him to question* *346 this conveyance. The rendition of the judgments created a lien upon the defendants’ lands, and authorized the complainant to come into equity to set aside this fraudulent deed and subject the land to sale; until then he could have maintained no bill for such a purpose, and therefore, by the express words of the act, his right to commence this suit did not accrue before that time. The argument of the counsel for the complainant, that from the date of the fraudulent deed to Hunt the statute commenced running, gives to this second section an operation so different from the plain sense of its language that it cannot be countenanced for a moment. If that were so, the declaration of the act that a party shall sue within seven years after his right of action accrues, would be unintelligible and without meaning. The case of Reeves and Hayter vs. Dougherty and Ewing, 7 Yerg. Rep. 222, which is relied on to support this position, does not sustain the argument. That was a case where the negroes, to subject which the bill was brought, were in the possession of Mrs. Ewing more than three years after the judgment and execution at law, and consequently more than three years after the right to file the bill accrued. The only question, therefore, was whether the statute would run in favor of a possession, and operate to protect a title acquired by fraud. The court decided in accordance with all the modern authorities that it would. It is true one member of the court, in delivering his opinion, indicates that the statute would run in favor of the possession of a slave from the time possession should be taken, although no right of action existed in favor of any one until long after. But this was a loose dictum of one judge only upon a question not existing in the case, and clearly against the plain language of the act of 1715, ch. 27, sec. 5. It has always been holden under that act that possession of negroes belonging to an intestate’s estate before administration be taken does not operate to confer a title on the possessor. And why? Because there was no person who had a right to sue. Why then should possession operate in favor of the possessor and bar the right of creditors before they have a right to sue? There can be no reason for the operation of the act in the one case which does not exist in the *347 other. We conclude, therefore, that the statute of limita- • tions is no bar to the complainant’s right to a decree in this. case.
The fifth and only remaining question is as to the extent of the relief. There can be no decree for the complainant except for the judgment No. 1 rendered 30th of November, 1832, for four hundred and eighty dollars and fifty cents. This judgment is regular and valid, and gave the complainant a right to file this bill. Seven years did not elapse from the date of its rendition to the 3d of October, 1835, the time this suit was commenced. The judgments Nos. 2, 3 and 5 are void for want of the assumption by the court of all those facts upon which its jurisdiction depended. The judgment No. 4 was rendered 28th February, 1828, and as more than seven years elapsed before the bill was filed, the right to the relief it seeks for the amount of that judgment is barred. The decree will therefore be reformed and rendered to the extent indicated.